**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KURTIS KING, | |
|       Plaintiff | |
| v. | Civil Action No. 16-727 (CKK) |
| HALEY BARBOUR, JR., | |
|       Defendant | |

**MEMORANDUM OPINION**
(August 21, 2019)

This case arises from a physical altercation that took place between Plaintiff and Defendant on April 30, 2015. Defendant was standing on a sidewalk with his wife and two friends. Defendant attacked Plaintiff after taking offense to comments Plaintiff made about the appearance of Defendant's wife. Plaintiff filed this civil lawsuit asserting causes of action for assault, battery, and intentional infliction of emotional distress. Defendant also faced criminal charges for the alleged attack and was convicted of criminal simple assault on August 2, 2018.

Plaintiff has filed a [57] Motion for Partial Summary Judgment based on the collateral estoppel effect of Defendant's guilty verdict. Plaintiff asks the Court to grant summary judgment on Plaintiff's Count 1 claim for assault and Count 2 claim for battery. Plaintiff also asks the Court to grant summary judgment as to the element of intentional conduct with respect to Plaintiff's Count 3 claim for intentional infliction of emotional distress.[1]

---

[1] In his Reply, Plaintiff also asks that the Court grant summary judgment "[i]n favor of Mr. King on whatever remains of Count I … of Mr. Barbour's Counterclaim." Pl.'s Reply, ECF No. 59, 1. But, the Court already dismissed Defendant's Count I counterclaim. *See* Feb. 28, 2017 Order, ECF No. 43. As Defendant's Count I counterclaim has already been dismissed, summary judgment on that claim is unnecessary.

Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court GRANTS IN PART and DENIES IN PART Plaintiff's [57] Motion to for Partial Summary Judgment. The Court GRANTS Plaintiff's Motion for Summary Judgment on his Count 1 claim for assault and his Count 2 claim for battery based on collateral estoppel. However, the court DENIES Plaintiff's Motion for Summary Judgment on the element of intentional conduct with respect to Plaintiff's Count 3 claim for intentional infliction of emotional distress as that issue was not litigated in Defendant's criminal trial.

## I. BACKGROUND

According to the findings of the judge presiding over Defendant's criminal trial in the Superior Court of the District of Columbia, on April 30, 2015, Defendant was standing with his wife and two others on a sidewalk. As Plaintiff, who was intoxicated, passed the group, Plaintiff passed close to Defendant's wife and made offensive remarks to her. Defendant did not hear exactly what the remarks were, but his wife did. She understandably took offense. Defendant called out to Plaintiff who had already passed the group. Defendant then attacked Plaintiff. The parties continue to dispute the events leading up to this interaction. However, the events of Defendant's criminal trial, described below, are not disputed.

---

[2] The Court's consideration has focused on the following documents:
- Pl./Counter-Def.'s Mem. of Points and Authority in Support of his Mot. for Partial Summary Judgment ("Pl.'s Mot."), ECF No. 57-2;
- Def. Barbour's Opp'n to Pl.'s Mot. for Partial Summary Judgment ("Def.'s Opp'n"), ECF No. 58; and
- Pl./Counter-Def.'s Reply Mem. in Support of his Mot. for Partial Summary Judgment ("Pl.'s Reply"), ECF No. 59.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

On August 1 and 2, 2018, Defendant's criminal trial was conducted in the Superior Court of the District of Columbia. Pl.'s Statement of Undisputed Material Facts ("Pl.'s Stat."), ECF No 57-3, ¶ 1. Defendant was represented by Marlon Griffith, who also represents Defendant in this civil matter. *Id.* at ¶ 2. At the trial, the United States presented three witnesses—Plaintiff, Detective Michael Murphy, and Jill Quinones, a friend of Plaintiff's who was with him the night of the incident. *Id.* at ¶ 3.

During the United States' case, Plaintiff testified, in relevant part, that while walking to his car he saw and commented on an attractive woman. *Id.* at ¶ 4d; *see also* Ex. B, ECF No. 57-4, 3: 11-75: 11 (Plaintiff's testimony at Defendant's criminal trial). Plaintiff testified that he did not make physical contact with the woman and continued walking. *Id.* at ¶ 4e. Plaintiff then stated that he heard Defendant shouting at him. Immediately following these shouts, Defendant ran towards Plaintiff and began hitting and attacking him. *Id.* at ¶ 4f-g. Plaintiff testified that Defendant continued striking him with a closed fist in the head even after he had fallen to his knees. *Id.* at ¶ 4j, o. Plaintiff further testified that he had no time to react or to get out of the way and that he never lunged or hit at Defendant. *Id.* at ¶ 4h-i. Plaintiff explained that he was seriously injured by the attack. *Id.* at ¶ 4k-n.

In his testimony, Detective Murphy stated that he had interviewed Defendant after his arrest the morning of May 1, 2015. *Id.* at ¶ 5b; *see also* Ex. B, ECF No. 57-4, 75: 15-80: 9 (Detective Murphy's testimony). Detective Murphy stated that Defendant had been charged at the time with aggravated assault. *Id.* at ¶ 5c. The government moved into evidence the video recording of Detective Murphy's interview with Defendant. Ex. B, ECF No. 57-4, 79: 4.

Finally, Ms. Quinones, who was with Plaintiff the night of the incident, testified that after walking past two men playfighting next to a woman on the sidewalk she noticed that Plaintiff was no longer walking with her. Pl.'s Stat., ECF No. 57-3, ¶ 6c; *see also* Ex. B, ECF No. 57-4, 80: 24-117: 20 (Ms. Quinones's testimony). When she turned to look for Plaintiff, she saw him on the ground being physically attacked by Defendant. *Id.* at ¶ 6d. She testified that Defendant stood over Plaintiff and punched him several times, but she never saw Plaintiff hit Defendant. *Id.* at ¶ 6e-f.

When it was time for the Defense to put on its case, Defendant took the stand to testify in his own defense. *Id.* at ¶ 7; *see also* Ex. C, ECF No. 57-5, 3: 21- 35: 2 (Defendant's testimony). Defendant stated that he was on a date with his wife, standing in front of a restaurant saying goodbye to friends, when he saw Plaintiff walk close by his wife and say something. *Id.* at ¶ 7b. Defendant testified that he asked Plaintiff what he said multiple times until Plaintiff turned around. *Id.* at ¶ 7c. Defendant stated that Plaintiff then took a few steps towards Defendant and his group. *Id.* at ¶ 7e. Defendant testified that he stepped towards Plaintiff because he thought Plaintiff was coming to hit him. *Id.* at ¶ 7f. Defendant stated that he struck Plaintiff in the face two or three times before Plaintiff fell to the ground. *Id.* at ¶ 7g. Defendant explained that he struck Plaintiff with his right hand and held Plaintiff's head with his left hand but stopped hitting Plaintiff when Plaintiff fell to his knees. *Id.* at ¶ 7j-k. Defendant admitted that he did not call 911 or remain at the scene after the attack. *Id.* at ¶ 7m. Defendant explained that he hit Plaintiff because he thought Plaintiff was going to strike him, his wife, or one of his friends and he felt threatened. *Id.* at ¶ 7h-i. He admitted that during his custodial interview with Detective Murphy he had said that he "beat the shit" out of Plaintiff. *Id.* at ¶ 7l.

Following Defendant's testimony, Defendant moved for judgment of acquittal but was denied. The parties then made their closing statements. *Id.* at ¶ 8.

In its closing statement, the United States argued that Defendant assaulted Plaintiff and had not acted in self-defense. *Id.* at ¶ 9a-b; *see also* Ex. C, ECF No. 57-5, 39: 3-46: 15 (United States' closing statement). The United States contended that Plaintiff had walked away from Defendant after his comment to Defendant's wife and that Defendant had rushed to attack Plaintiff. *Id.* at ¶ 9c-d. The United States emphasized that, during his custodial interview, Defendant had not mentioned Plaintiff moving to attack him or the need for self-defense or defense of others. *Id.* at ¶ 9e-f.

In Defendant's closing statement, Defense counsel argued that Defendant had hit Plaintiff in self-defense or defense of others because he felt threatened. *Id.* at ¶ 10a-b; *see also* Ex. C, ECF No. 57-5, 46: 17-61: 17 (Defendant's closing statement). Defense counsel pointed out that Plaintiff was intoxicated at the time and that Plaintiff's arguments were more consistent with being hit once or twice, not repeatedly. *Id.* at ¶ 10d-e.

After a brief recess to consider the arguments, the court made an oral ruling. *Id.* at ¶ 11; *see also* Ex. C, ECF No. 57-5, 68: 25-76: 12 (the judge's oral ruling). The court began by noting that, to prove simple assault, "the Government must prove that defendant in this case, Haley Barbour, Jr., with force of violence injured or attempted to injure a person, in this case it's Kurtis King. Second, he intended to use force of violence against the person, and third, at the time he had the apparent ability to injure that person." Ex. C, ECF No. 57-5, 69: 3-8. The court decided that "[t]here's no dispute that those elements are satisfied." *Id.* at 69: 9.

The court went on to explain that "[t]he defendant has introduced the defense of self defense, which I find they have done so to the point that the Government must now prove beyond a reasonable doubt that the defendant was not acting in self defense." *Id.* at 69: 10-13. The court then rejected Defendant's self-defense and defense of others theories. First, the court found that "[t]here's no evidence to my mind that shows that Mr. Barbour reasonably believed himself to be in danger at that time." *Id.* at 74: 2-4. The court explained that Defendant "easily could have chosen not to approach. Assuming for the sake of argument that Mr. King approached him, he could have chosen not to approach him. He could have chosen not to engage. He was standing with other people. He could have warned him, you come any step closer I'll do something. None of that took place." *Id.* at 74: 5-10. The court found that Defendant "did not believe himself to be in physical danger, that he was angry at what he believes to be an insult. He wasn't defending his wife from physical threats. He wasn't defending himself from physical threats. He was avenging an insult to his wife's honor." *Id.* at 74: 19-23. Elaborating, the judge stated that Defendant "was protecting [his wife] from offensive remarks and insult. He was not protecting her physically. He was not in physical danger. His wife was not in physical danger." *Id.* at 76: 5-8. Finally, the Court determined that "[e]ven assuming that Mr. Barbour believed that he had to punch first in order to protect himself, I find him guilty of simply assault because I believe he used excessive force." *Id.* at 74: 16-18. However, this Court notes that the judge in Defendant's criminal trial made no finding as to how many times Defendant punched Plaintiff.

On August 21, 2018, the court held a sentencing hearing during which Plaintiff gave a victim impact statement. Pl.'s Stat., ECF No 57-3, ¶ 17-18. The court ordered restitution in the amount of $1,342 as that amount is the "uncompensated expenses directly attributable to the

immediate treatment received after the injury." Ex. D, ECF No. 57-6, 20: 9-11. The court also

sentenced Defendant to a suspended 60-day incarceration, one year of probation, and 20 hours of

community service. Pl.'s Stat., ECF No 57-3, ¶ 19. The court reiterated that Defendant had not

acted in self-defense or defense of others. *Id.* at ¶ 20. The court then entered a Judgment and

Commitment order. *Id.* at ¶ 21.[3]

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar

summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to

the relevant facts; the dispute must be "genuine," meaning that there must be sufficient

admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to

specific parts of the record—including deposition testimony, documentary evidence, affidavits or

declarations, or other competent evidence—in support of its position, or (b) demonstrate that the

---

[3] In his Statement of Undisputed Facts, Defendant states that, prior to the trial discussed here, a jury trial was commenced on February 6, 2018. At the conclusion of the United States' case, the court granted a Judgment of Acquittal and dismissed Defendant's felony assault count. Additionally, the jury was unable to reach a verdict on the count of simple assault and a mistrial was declared. Def.'s Opp'n, ECF No. 58, 1. As Defendant was found guilty of simple assault during a second trial, the initial mistrial has no impact on the Court's analysis.

materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50

(internal citations omitted)

### III. DISCUSSION

Plaintiff requests that summary judgment be granted as to his Count 1 claim for assault, his Count 2 claim for battery, and the element of intentional conduct with respect to his Count 3 claim for intentional infliction of emotional distress. Plaintiff requests summary judgment on the grounds of collateral estoppel.

Collateral estoppel bars litigants from re-litigating issues that either were previously litigated or could have been previously litigated. Collateral estoppel has "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). A party is collaterally estopped from relitigating an issue when "(1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits, (3) after a full and fair opportunity for litigation by the parties or their privies, (4) under circumstances where the determination was essential to the judgment, and not merely dictum." *Bryson v. Gere*, 268 F. Supp. 2d 46, 56-57 (D.D.C. 2003) (quoting *Wash. Med. Ctr. v. Holle*, 573 A.2d 1269, 1283 (D.C. 1990)).[4]

---

[4] The Court notes that there is some debate as to whether collateral estoppel is substantive or procedural and whether a court sitting in diversity should apply federal or state collateral estoppel standards. *See Bryson*, 268 F. supp. 2d at 55-57. However, the standards for collateral estoppel are substantially similar under District of Columbia state or federal law. *Id.* The additional consideration under federal law, "whether applying collateral estoppel would work a basic unfairness," would not affect its application in this case. *Scahill v. District of Columbia,* 271 F. Supp. 3d 216, 226 n.5 (D.D.C. 2017) (internal quotation marks omitted).

In Defendant's criminal lawsuit, Plaintiff was the complaining witness; however, Plaintiff was not actually party to the suit. As the previous lawsuit was a criminal matter, the parties to the suit were the United States and Defendant. However, "[u]nder the doctrine of offensive collateral estoppel, or issue preclusion, a defendant may be prevented from relitigating identical issues that the defendant litigated and lost against another plaintiff." *Hurst v. The Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 31 (D.D.C. 2007) (citing J*ack Faucett Associates, Inc. v. AT&T*, 744 F.2d 118, 124 (D.C. Cir. 1984)). Trial courts have "broad discretion" to determine when the use of offensive collateral estoppel is appropriate. *Parklane*, 439 U.S. at 331-332.

Courts in the District of Columbia have used offensive collateral estoppel to bar civil litigants from re-litigating issues which were resolved in a prior criminal suit. *See Ross v. Lawson*, 395 A.2d 54, 56-57 (D.C. 1978) (using collateral estoppel to bar re-litigation of the issue of liability for assault in a civil lawsuit when the defendant had been criminally convicted of the assault); *United States v. Uzzell*, 648 F. Supp. 1362, 1365-66 (D.D.C. 1986) (using the collateral estoppel effect of the defendants' criminal conviction to bar re-litigation of liability in a civil lawsuit); *Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp. 2d 96, 100 (D.D.C. 2003) (finding that the defendant's criminal conviction barred re-litigation of the same issue in a civil action); *S.E.C. v. Bilzerian*, 29 F.3d 689, 694 (D.C. Cir. 1994) (affirming district court's grant of partial summary judgment based on collateral estoppel effect of the defendant's criminal conviction). As such, the Court must determine the collateral estoppel effect on this civil lawsuit of Defendant's criminal conviction for simple assault.

## A. Collateral Estoppel Effect on Plaintiff's Claims for Assault and Battery

First, Plaintiff seeks partial summary judgment as to his Count 1 claim of assault and his Count 2 claim of battery. As was previously explained, Defendant was found guilty beyond a reasonable doubt of criminal simple assault under D.C. Code § 22-404(a)(1). In finding Defendant guilty of criminal simple assault, the judge found beyond a reasonable doubt that Defendant, with force or violence, injured or attempted to injure Plaintiff, that Defendant intended to use force or violence against Plaintiff, and that Defendant had the apparent ability to do so. Ex. C, ECF No. 57-5, 69: 1-8; *see also Mungo v. United States*, 772 A.2d 240, 245 (D.C. 2001) (explaining that assault is defined "as the unlawful use of force causing injury to another or the attempt to cause injury with the present ability to do so"). In order to be liable for civil assault, the defendant must intend to cause harmful or offensive contact with the person of another or intend to cause "an imminent apprehension of such a contact" and that person must be "put in such imminent apprehension." Restatement (Second) of Torts § 21. And, to be liable for civil battery, the defendant must intend to cause a harmful or offensive contact with another or intend to cause "an imminent apprehension of such a contact" and harmful contact with the person must result. *Id.* at § 13; *see Davis v. Giles*, 769 F.2d 813, 815 (D.C. Cir. 1985) (looking to the Restatement for the elements of civil assault and battery). Accordingly, "civil and criminal liability for assault and battery are predicated on proof of the same basic elements of an act and an intent to commit the act." *Id.* at 816 (Wald, J., dissenting). The primary difference between the two is that a higher degree of forcefulness or violence is required for a criminal conviction than for civil liability. *Id.* at 815.

Plaintiff argues that Defendant is collaterally estopped from contesting civil liability for assault and battery based on Defendant's criminal assault conviction. *See Ross*, 395 A.2d at 55 (finding that a plaintiff in a civil assault case may collaterally estop defendant with a prior conviction for criminal assault arising from the same incident from contesting liability). The Court agrees and concludes that Defendant's liability for assault and battery has been actually litigated, determined by a valid judgment on the merits, after Defendant had a full and fair opportunity for litigation, and was essential to the judgment. *Bryson*, 268 F. Supp. 2d at 56-57.

First, the Court finds that there is no material factual dispute that Defendant's liability has been actually litigated in the criminal case. In determining if an issue was actually litigated, the Court "look[s] beyond the labels of the claims and examine[s] the single, certain and material points arising out of the allegations and contentions of the parties." *Id.* at 57 (internal quotation marks omitted). During Defendant's criminal trial, the United States and Defendant both presented evidence related to the attack on Plaintiff. *See generally* Ex. B, ECF No. 57-4 (trial transcript part 1); Ex. C, ECF No. 57-5 (trial transcript part 2). The United States presented three witnesses and Defendant testified in his own defense. *Id.* When testifying, Defendant presented his self-defense and defense of others theories. Ex. C, ECF No. 57-5, 3: 21-35: 2. Additionally, the closing arguments of both the United States and Defendant focused exclusively on the nature of Defendant's attack on Plaintiff and whether or not such an attack was legally justified. *Id.* at 39: 3-61: 17. These issues, which were actually litigated in Defendant's criminal trial, are the same issues central to Plaintiff's civil assault and battery claims.

The Court notes that this case is not like that cited by Defendant, *Lassiter v. District of Columbia*, 447 A.2d 456 (D.C. 1982). In *Lassiter*, the plaintiff brought civil claims against the

District of Columbia and an officer for assault and false arrest. 447 A.2d at 459. Defendants argued that the plaintiff's claims were barred by collateral estoppel because the plaintiff had previously been convicted for assault of the officer based on the same events. The court concluded that collateral estoppel did not bar the plaintiff's claims because, during the plaintiff's criminal proceeding, the issue of whether or not the officer used excessive force was not actually litigated. *Id.* at 460. Here, whether or not Defendant used excessive force was a central issue in Defendant's criminal trial because Defendant argued self-defense and defense of others to legally justify his assault of Plaintiff. And, the judge in Defendant's criminal trial explicitly found that Defendant used excessive force. Ex. C, ECF No. 57-5, 74: 17-18 ("I find him guilty of simple assault because I believe he used excessive force."). Accordingly, *Lassiter* does not assist Defendant because, in Defendant's criminal trial, the issue of excessive force was actually litigated.

Because the issues of Defendant's liability for his attack on Plaintiff and whether or not such attack was legally justified were actually litigated, the Court concludes that Plaintiff has met the first requirement for the use of collateral estoppel.

Second, the Court concludes that there is no material factual dispute that Defendant's liability and lack of legal justification were determined by a valid judgment on the merits. Defendant does not contest that the D.C. Superior Court is a court of competent jurisdiction and that the Judgment and Commitment Order, confirming the judge's oral ruling at the conclusion of the trial, completed Defendant's guilty verdict. *See* Ex. E, ECF No. 57-7 (sentence of the court). As such, the court finds that Plaintiff has also met the second requirement for the use of collateral estoppel.

Third, the Court finds no material factual dispute as to whether Defendant had a full and fair opportunity to litigate his liability and his self-defense and defense of others theories during his criminal trial. During Defendant's criminal trial, Defendant was fully represented by the same counsel that represents him in this civil suit. Defense counsel cross-examined each of the United States' witnesses. *See generally* Ex. B, ECF No. 57-4 (showing cross examination of United States' witnesses). Additionally, during the criminal trial, Defense counsel introduced at least some evidence which had been obtained through discovery in this case. *Id.* at 112: 7-113: 4 (using Ms. Quinones's deposition testimony in this case to question her while she testified in the criminal trial). Furthermore, Defendant testified on his own behalf during his trial, giving Defendant the opportunity to share his interpretation of what happened, specifically his self-defense and defense of others theories. Ex. C, ECF No. 57-5, 3: 21- 35: 2. Defendant points to no incidents at trial that prevented him from having a full and fair opportunity to litigate his liability. Additionally, Defendant cites no evidence that was excluded from the criminal trial but could potentially be introduced in this civil matter. As such, the Court concludes that the third requirement for collateral estoppel is also met.

Fourth, the Court concludes that there is no material factual dispute as to whether Defendant's liability and lack of legal justification were essential to the judgment. Defendant was criminally charged with only one offense, simple assault. As such, in Defendant's criminal trial, his liability for assaulting Plaintiff, as well as the validity of his self-defense and defense of others theories, were the only issues presented.

These issues were also the only issues discussed by the judge in issuing his oral ruling. The judge explained that, to prove simple assault, "the Government must prove that the

defendant in this case … with force of violence injured or attempted to injure a person, in this case it's [Plaintiff]. Second, he intended to use force or violence against the person, and third, at the time he had the apparent ability to injure that person." Ex. C, ECF No. 57-5, 69: 3-8. The judge found that "[t]here's no dispute that those elements are satisfied." *Id.* at 69: 9-10. In discrediting Defendant's self-defense and defense of others theories, the judge explained that there was "no evidence … that shows that [Defendant] reasonably believed himself to be in danger at that time." *Id.* at 74: 2-4. Moreover, the judge went on to explain that, even if Defendant believed he was protecting himself, Defendant was still "guilty of simple assault because I believe he used excessive force." *Id.* at 74: 16-18. As such, the findings that Defendant was liable for assault and battery and that his actions were not justified by self-defense or defense of others were essential to the judgment. The Court determines that the fourth factor also weighs in favor of collateral estoppel.

After finding that the conditions of collateral estoppel are met, the Court must still determine whether or not the use of collateral estoppel is appropriate under the circumstances of this case. *Parklane*, 439 U.S. at 331-332 (granting courts "broad discretion" in determining when to apply offensive collateral estoppel). The Court finds that the circumstances of this case make the use of collateral estoppel appropriate as to Plaintiff's Count 1 claim for assault and Count 2 claim for battery. *See Ross*, 395 A.2d at 56-57 (approving of the use of offensive collateral estoppel to bar the defendant from relitigating his liability for assault following the defendant's assault conviction). This case was stayed for approximately ten months pending the results of Defendant's criminal trial. Defendant consented to the staying of this civil matter pending the resolution of his criminal trial. *See e.g.,* Oct. 18, 2017 Joint Status Report, ECF No. 51

(explaining that "the parties hereby consent to the … stay of the above-captioned matter until the conclusion of the Defendant's related criminal trial"). It would make little sense to stay this case pending the resolution of Defendant's criminal trial if the resolution of that trial would have no effect on this civil proceeding.

In his Opposition, Defendant spends only a page and a half arguing against the application of collateral estoppel to Plaintiff' Count 1 claim for assault and his Count 2 claim for battery. While it is not clear, Defendant appears to make three arguments against the use of collateral estoppel on these two Counts. First, Defendant contends that, even though his self-defense claim was rejected in his criminal trial, "his claim will still be relevant in the civil case because, if credited by a jury, [his claim] would negate a necessary element of intentional infliction of emotional distress. Thus, it would be fundamentally unfair for the court to not allow Defendant Barbour to put forth evidence that he believed he was in imminent danger of bodily injury by the Plaintiff and the circumstances of the encounter." Def.'s Opp'n, ECF No. 58, 8. Second, Defendant contends that collateral estoppel would not promote judicial economy as the evidence necessary for Plaintiff's claim for intentional infliction of emotional distress would be similar to the evidence for Plaintiff's assault and battery claims. Third, Defendant contends that "it can be potentially confusing to a jury to receive evidence of self-defense and yet be told that they cannot consider liability." *Id.* The Court is persuaded by none of Defendant's arguments. The Court finds that there would be no unfairness to Defendant in preventing him from re-litigating issues which he has already litigated, and which were already decided against him using a higher burden of proof than that required for civil liability.

First, Defendant contends that the use of collateral estoppel would be unfair as it would prevent him from putting forth evidence that he believed he was in imminent danger. Defendant posits that such evidence, if credited, may negate a necessary element of Plaintiff's intentional infliction of emotional distress claim. The Court disagrees. As was discussed above, Defendant put on evidence of self-defense and defense of others during his criminal trial. The judge in Defendant's criminal trial made detailed and specific findings showing that the United States had proved beyond a reasonable doubt that Defendant's actions were not justified by self-defense or defense of others. The court explained that Defendant "did not believe himself to be in physical danger, that he was angry at what he believes to be an insult. He wasn't defending his wife from physical threats. He wasn't defending himself from physical threats. He was avenging an insult to his wife's honor." Ex. C, ECF No. 57-5, 74: 19-23. The court went on to find that "[e]ven assuming that Mr. Barbour believed that he had to punch first in order to protect himself, I find him guilty of simple assault because I believe he used excessive force." *Id.* at 74: 16-18. Defendant's claims of self defense and defense of others have already been adjudicated, thoroughly considered, and rejected. It is not unfair to deny him a second bite at the apple.

Second, the Court disagrees with Defendant and finds that the use of collateral estoppel will promote judicial efficiency in this case. Defendant contends that collateral estoppel will not promote judicial efficiency because, in presenting his intentional infliction of emotional distress claim, Plaintiff must still put forth evidence of Defendant's conduct. Defendant argues that such evidence will be largely similar to the evidence which would need to be presented for Plaintiff's assault and battery claims. As such, according to Defendant, the use of collateral estoppel will not make the civil trial more efficient.

The Court finds that, even if evidence of Defendant's conduct may be overlapping to some degree between Plaintiff's intentional infliction of emotional distress claim and his claims for assault and battery, collateral estoppel will still promote judicial efficiency. The use of collateral estoppel in this case resolves the issues of Defendant's liability for Plaintiff's Count 1 and 2 claims for assault and battery. Additionally, the use of collateral estoppel resolves the issue of whether or not Defendant's actions were justified by self-defense or defense of others. As such, the Court finds that the use of collateral estoppel will conserve this Court's resources.

Finally, Defendant argues that the jury would be confused if it were to receive evidence that Defendant believed he was in imminent danger but be unable to consider liability for Plaintiff's assault and battery claims. The Court finds this concern to be overstated. If this litigation results in a jury trial, the Court can instruct the jury that liability has already been decided for Plaintiff's claims for assault and battery. As "[a] jury is presumed to follow its instructions," limiting certain evidence to particular legal issues would not cause undue confusion. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Accordingly, the Court concludes that collateral estoppel bars re-litigation of Defendant's liability as to Plaintiff's Count 1 claim for assault and his Count 2 claim for battery. The Court further concludes that collateral estoppel bars re-litigation of Defendant's self-defense and defense of others theories. The Court GRANTS summary judgment as to Plaintiff's Count 1 and 2 claims for assault and battery. The only issue remaining as to those claims is damages. The Court notes that Plaintiff will not be compensated in this civil matter for the $1,342 that Defendant already paid in restitution as a result of Defendant's criminal conviction.

**B.  Collateral Estoppel Effect on Plaintiff's Claim for Intentional Infliction of Emotional Distress**

In addition to requesting collateral estoppel on his Counts 1 and 2 claims for assault and battery, Plaintiff also requests that the Court use collateral estoppel to find that the element of intentional conduct has been satisfied as a matter of law for Plaintiff's Count 3 claim of intentional infliction of emotional distress. As was previously explained, to state a claim for the intentional infliction of emotional distress, a plaintiff must allege "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff [to suffer] severe emotional distress." *Ortberg*, 64 A.3d at 163 (internal quotation marks omitted). Plaintiff asks the Court to find that the element of intentionality has been satisfied through collateral estoppel, leaving only the issues of whether or not Defendant's conduct was extreme and outrageous and whether or not Plaintiff suffered severe emotional distress.

The Court finds that the use of collateral estoppel is not appropriate in these circumstances. In convicting Defendant of assault, the judge in Defendant's criminal trial found that Defendant "intended to use force or violence against [Plaintiff.]" Ex. C, ECF No. 57-5, 69: 6-7. However, in Defendant's criminal trial, the judge did not find that Defendant intended to cause Plaintiff to suffer severe emotional distress as that issue was not presented. *See Waldon v. Covington*, 415 A.2d 1070, 1076, n. 18 (D.C. 1980) (explaining that courts look to "whether a reasonable man performing these acts could be presumed to have foreseen causing emotional distress" when determining the intent element for a claim of intentional infliction of emotional distress). In Defendant's criminal assault trial, the issue of whether or not Defendant intended to cause Plaintiff to suffer severe emotional distress was not litigated, was not determined by the judge, and was not essential to Defendant's conviction. It is not an appropriate use of offensive

collateral estoppel to extrapolate an intent to cause severe emotional distress from the judge's prior finding that Defendant intended to use physical force or violence against Plaintiff. Plaintiff cites no case in which collateral estoppel has been used in such a way. Accordingly, the Court finds that the use of collateral estoppel on Plaintiff's Count 3 claim for the intentional infliction of emotional distress claim is not appropriate.

While collateral estoppel does not apply to the intentionality element of Plaintiff's intentional infliction of emotional distress claim, the Court notes that Defendant will not be permitted to argue that his actions were justified by self-defense or defense of others. As the Court has previously explained, Defendant raised these theories in his criminal trial, and, making detailed findings, the judge rejected these theories. *Supra* Sec. III.A. While Defendant will not be permitted to raise self-defense or defense of others, he will be permitted to introduce other evidence or testimony that may be used to disprove the elements of intentional infliction of emotional distress. For example, Defendant can introduce evidence that Plaintiff initiated the contact which started the incident and that Plaintiff made insulting comments to Defendant's wife so that Defendant "was avenging an insult to his wife's honor." Ex. C, ECF No. 57-5, 74: 22-23.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's [57] Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART. The Court finds that the use of collateral estoppel is appropriate as to Plaintiff's Count 1 claim for assault and Count 2 claim for battery. The Court GRANTS Plaintiff summary judgment on those claims, with the issue of damages to be decided at a later time. However, the Court finds that collateral estoppel cannot be used to establish the

intent element for Plaintiff's Count 3 intentional infliction of emotional distress claim as that issue was not litigated in Defendant's criminal trial for assault. The Court DENIES Plaintiff summary judgment on the intent element of his claim for intentional infliction of emotional distress.

An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge